Filed 4/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | H041463<br>(Santa Clara County<br>Super. Ct. No. 1-13-JD22132) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>J.R.,<br><br>      Defendant and Appellant. | |

In this dependency proceeding, the juvenile court declared A.R. a dependent of the court and ordered him to remain in the custody of both parents under the supervision of the Department of Family and Children's Services (Department). J.R., A.R.'s presumed father, and E.R., A.R.'s mother, (parents) were not married. At disposition in January 2014, the court also ordered family maintenance services for both parents. In March 2014, father moved out of the home not pursuant to any court order. He eventually disengaged from all services without addressing his alcoholism or marijuana use. Using the Request to Change Court Order form (JV-180), the Department requested modification of the court's dispositional order that both parents receive family maintenance services. (Welf. & Inst. Code, § 388.)[1]

---

[1] All further references are to the Welfare and Institutions Code unless otherwise specified.

A September 12, 2014 order made removal findings concerning removing A.R. from father's physical custody. The order continued A.R. under the care, custody, and control of mother under the Department's supervision, provided family maintenance services for only A.R. and mother, and provided supervised visitation with A.R. for father.

On appeal, father claims that the juvenile court erred in granting the Request to Change Order because there was no change in circumstances warranting modification and ordering A.R. removed from his physical custody. (See § 395, subd. (a)(1).) We conclude that there was evidence of changed circumstances sufficient to justify the court's modification of its prior order regarding parental custody and family maintenance services. Although the court's removal findings were not supported by substantial evidence, we find the error to be harmless. At the time of the findings, father had already moved out of the home, A.R. was no longer actually in father's physical custody, and, under the September 12, 2014 order, A.R. remained in the home with mother. We will strike the removal findings and affirm.

I

*Procedural History and Facts*

A. *Background*

On October 8, 2013, a dependency petition was filed on behalf of A.R., then four years old, under section 300, subdivisions (b) (failure to protect) and (c) (serious emotional damage). The initial hearing report recommended that A.R. and his half siblings remain in the home. The report stated: "While there are significant concerns regarding [father's] alcohol abuse, domestic violence against [mother], the emotional stability of the mother, and past use of inappropriate discipline, the children appear well-cared for, and state that they feel safe in the home at this time." It was reported that parents "acknowledge the concerns and express willingness to participate in services to make the needed changes." At the initial hearing on October 9, 2013, the court ordered

2

A.R. to remain released to mother and father and A.R.'s half-siblings to remain released to mother on the condition that parents cooperate with the home supervision program.

On October 24, 2013, a first amended petition was filed on A.R.'s behalf under section 300, subdivisions (b) (failure to protect) and (c) (serious emotional damage). On November 20, 2013, a second amended petition was filed on behalf of A.R. under subdivisions (b), (c), and (j) (abuse of sibling) of section 300.

On November 22, 2013, the court issued a restraining order against father to protect mother, A.R., and two half-siblings. By its own terms, the order expired at midnight on November 15, 2014.

Father and mother submitted the pending dependency petition for decision on documentary evidence. The court considered the Jurisdiction/Disposition Report dated October 25, 2013, an addendum report dated November 15, 2013, and a second addendum report dated December 20, 2013.

In the second addendum report to the Jurisdiction/Disposition Report, the social worker reported that both parents "continue to demonstrate a willingness to cooperate with the Department and to make the changes needed to address the concerns that brought them to the attention of child welfare" and "[b]oth parents continue to communicate well with the Department, and to participate in all the services that have been recommended." In her assessment, father was "committed to drug treatment and to his sobriety from alcohol at this time."

In the second addendum report, the social worker further indicated that, on November 14, 2013, father had completed his intake at the Department of Alcohol and Drug Services and he had been referred to Pathway for treatment. He was scheduled to begin outpatient treatment on December 31, 2013. As directed, father had been calling in every day to Norchem Sentry and he had not missed any calls since November 20, 2013. Father's urine tests had been positive for marijuana. He had a medical marijuana card. The results of the other screens had been negative. The social worker stated that there

3

was "no evidence that [father's] marijuana use negatively impacts his parenting or puts his child at risk."

According to the second addendum report, on December 17, 2013, father informed the social worker that he was attending AA meetings at least three times per week. Father was also continuing to attend the weekly parenting without violence class and weekly individual counseling sessions. He was taking Zoloft for anxiety and depression as prescribed.

In the second addendum report, the social worker continued to recommend that the juvenile court find that A.R. was a child described by subdivisions (b) and (j) of section 300, adjudge A.R. to be a dependent child of the court, and order that A.R. remain in his parents' custody subject to the Department's supervision. The social worker further recommended, "[b]ased upon the parents' engagement and progress in services since the last [c]ourt hearing," that A.R. and his parents receive family maintenance services and A.R. remain in his parents' home.

On January 3, 2014, the juvenile court found that the allegations of the second amended petition as further amended were true and determined that A.R. was a child described by section 300, subdivisions (b) and (j). The court found the following allegations were true. "[F]ather has repeatedly perpetrated domestic violence against the mother in the family home, the father abuses alcohol, and the mother has mental health issues that interfere with her ability to parent the children." "[F]ather has perpetrated domestic violence against the mother on multiple occasions, including, but not limited to, breaking the mother's hand during an argument, chasing the mother with a machete, and pulling the mother by the hair and dragging her back into the house when she tried to leave the home during an argument." "[M]other has been diagnosed with PTSD, and has a history of depression, anxiety, and sleep problems. The mother was recently prescribed Sertraline (Zoloft) for her PTSD, and on 09/15/13, the mother stated to the children that

4

she wanted to die because the children did not love and appreciate her, and she attempted to overdose by swallowing an indeterminate number of the Zoloft and/or aspirin pills."

The court also found true the following allegations. "[F]ather . . . has a long history of alcohol abuse including drinking to the point of blacking out on occasion. The father admits to having a drinking problem which he has been unable to control. The father has not been able to maintain sobriety for longer than a two to three month period. [Father's] alcohol abuse, and resulting impaired judgment and impulse control, has contributed to the domestic violence with [mother], and places the children at risk of harm in his care." "[M]other and father have used inappropriate disciplinary measures on the child's half-siblings . . . . On at least one occasion, each sibling has been forced to kneel on beans or rice for up to twenty minutes, been forced to squat against the wall for ten to twenty minutes, and been hit five times each on the palms and backs of both the right and left hands."

At the same hearing, the juvenile court adjudged A.R. a dependent child of the court and made the dispositional orders concerning custody and family maintenance services. The court specifically ordered father to complete a 16-week parenting without violence class, participate in random substance abuse testing at least once a week and on demand testing, undergo a substance abuse assessment and complete the recommended drug treatment programs, complete an aftercare drug treatment program, and develop an aftercare relapse prevention plan. It also required father to complete a 12-step program, attend meetings a minimum of three times a week with written proof of attendance, and obtain a sponsor.

On June 23, 2014, the social worker filed a Request to Change Court Order (hereinafter "section 388 petition"), seeking modification of the order providing family maintenance services to father. The basis for the request was that father had not addressed substance abuse and domestic violence issues in that he continued to use alcohol and marijuana. Subsequent to November 2013, father had received positive drug

5

tests and missed drug tests.  He was not attending AA/NA meetings, he had been terminated from outpatient substance abuse treatment because he continued to use alcohol and marijuana, he had not called in for drug testing since June 4, 2014, and he had not attempted to see A.R. since June 6, 2014.  The social worker requested that "child be removed from Family Maintenance with the father and that the child remain in Family Maintenance with the mother."  She also asked for an order permitting father to have only supervised contact with A.R. under the supervision of "someone authorized by DFCS."

On September 12, 2014, the court held a hearing on the section 388 petition and conducted family maintenance review.

B.  *The September 12, 2014 Hearing*

At the September 12, 2014 hearing, the court admitted documentary evidence, including a Status Review Report dated May 9, 2014 and two addendum reports thereto and the Report in Support of 388 Petition dated July 2, 2014 and two addendum reports thereto.

The Status Review Report regarding family maintenance review indicated that on or about March 19, 2014, father had moved out of the family home at mother's request.  A.R. was residing with mother in Gilroy; father was residing in Watsonville.  The social worker had asked "parents to come up with a temporary custodial agreement so that [A.R.] could continue to have his father in his life."  She reported that parents had been "civil and able to communicate" regarding A.R.  The social worker was recommending that family maintenance services continue for both parents.

The Status Review Report also disclosed that father was "having difficulties in participating fully in his case plan."  He had been "resistant to attending a 12 step program and working with a sponsor."  He was "drinking alcohol again and abusing marijuana on a daily basis."  Although father had expressed a willingness to engage in services, "his actions show that he is only willing to some extent."

6

The first addendum report to the Status Review Report stated that father had "not participated in drug testing since March 20, 2014." The social worker had asked father to "speak with mother regarding custodial time with [A.R.]" but he had "not made the effort to come up with a schedule." Mother estimated that father had seen A.R. about once a week and mother was usually present. Father came to dinner at her home and he had twice stayed overnight. At this point, the social worker was still recommending that family maintenance services continue for both parents.

The second addendum report to the Status Review Report stated that, although "father has shown resistance to substance abuse services, he has shown some improvement within the last few weeks." He had attended nine AA/NA meetings since April 17, 2014 and he had consistently attended outpatient services for the previous six weeks. The social worker stated that, although "father continues to use marijuana by his own admission, he has not placed [A.R.'s] safety at risk, and has not been under the influence while [A.R.] is in his care." "[F]ather ha[d] shown his ability to be safe and loving toward [A.R.]" and father had been "safe, sober, and appropriate while caring for [A.R.]." Mother had reported that father visited with A.R. on a regular basis and behaved appropriately; he "normally spen[t] one to two hours twice a week with the child at the mother's home and in her presence." Father did not appear to be under the influence while in the child's presence. According to mother, "father walks the child to and from school on some days," he "spends time reading to and educating [A.R.]," they "spend time talking, playing, and eating snacks together," A.R. is "always very excited to see the father," and "father is engaging with the child." Father was living with his parents and four younger brothers. Mother indicated that father's family would assist in safeguarding A.R. during visits at father's home. A.R. had "recently spent overnights with the father at [father's] home without incident."

In that second addendum report, the social worker further indicated that mother had shown that "she is willing and able to maintain safety for [A.R.], as she has acquired

7

temporary restraining orders in the past and extended a peaceful contact order against the father." Father had "not shown any violent tendencies throughout this case, even while the mother asked him to leave the home." The social worker was recommending that the dependency case be dismissed with custody orders giving legal and physical custody to both parents and making mother's home A.R.'s primary residence.

In the Report in Support of the 388 Petition, dated July 2, 2014, the social worker changed her recommendations. As to the section 388 petition, she recommended that A.R. be "removed from the father," father be allowed supervised visitation, and mother continue receiving family maintenance services. As to family maintenance review, she was recommending dismissal of the dependency case with final orders granting mother sole physical and legal custody.

The social worker reported that, since the May 23, 2013 court hearing, "father has shown a significant decline in his interest [in] spend[ing] time with [A.R.] and an increase in risk factors regarding his ability to meet [A.R.'s] needs." "Since testing began in November 2013, the father has tested positive for [m]arijuana 23 times out of 34 tests." He was no longer participating in drug testing. In June 2014, Father's substance abuse counselor discharged father from Pathway's outpatient treatment due to father's "continued non-compliance" with the program and his "continued use of marijuana and alcohol." "Father was ordered to attend 3 AA/NA meetings per week and acquire a sponsor, and he ha[d] remained non-compliant." Father had documented his attendance to only nine meetings since January 2014, he had not obtained a sponsor, and, although he claimed to have gone to additional meetings, father had not provided proof of attendance.

The July 2, 2014 report further disclosed that father admitted his alcohol relapse began in April 2014. In June 2014, father told the social worker that he planned to continue to drink and use marijuana. The social worker stated that father was "making no effort to get sober." On a number of occasions in May and June 2014, father failed to

8

follow through with scheduled visits. Mother did not allow A.R. to see father on Father's Day because, when mother and father spoke the day before, father admitted he was drinking alcohol and mother's understanding was that father would abstain from alcohol or marijuana for 24 hours prior to seeing A.R.

Father had many excuses as to why he was not following through with services and with respect to A.R. Father had not "made an effort to spend time with [A.R.]" or developed a schedule for seeing A.R. In addition to failing to show up for planned visits with A.R., father had failed to show up for a scheduled June 11, 2014 meeting with the social worker to develop a custody plan regarding A.R. Father had subsequently indicated to the social worker that his plan was to continue drinking alcohol and using marijuana except during the 24 hours before a visit with A.R. He presently wanted to see A.R. every other weekend. Father indicated that he eventually wanted to have A.R. half time when he had a house and money but he had no money and no driver's license.

In an August 8, 2104 addendum report, the social worker made the same recommendations as she had in the previous report. She stated that father had not addressed the underlying issue of substance abuse but, in her assessment, father had made more of an effort to have contact with A.R. "By his own admission, he will continue to use alcohol though he is fully aware of his alcoholism and his tendencies to be violent, blackout, to have bad judgment and to lack control when he is under the influence."

In a September 12, 2014 addendum report, the social worker's recommendations with regard to the Department's section 388 petition were unchanged. As to family maintenance review, however, the social worker now recommended continued family maintenance services for mother and supervised visitation for father.

The addendum report reiterated that father was no longer drug testing. Father had "attended Pathway outpatient substance abuse services sporadically for 5 months, and was discharged in June 2014, due to continued non-compliance in the program and continued use of marijuana and alcohol." Father had failed to attend three AA/NA

9

meetings per week and obtain a sponsor. The report repeated that, in June 2014, father told the social worker that he planned to continue to drink alcohol and use marijuana.

On a more positive note, the report disclosed that father had "displayed more of an interest in seeing [A.R.] since July 2014." In July and August 2014, father participated in several supervised visits with A.R. at the Department's Office. Father had requested unsupervised visits on two occasions in July 2014 but mother had not allowed the unsupervised visits. Overnight visits with father, supervised by the paternal grandmother, had taken place every other weekend during August 2014.

The Department made the social worker available for cross-examination at the September 12, 2014 hearing. The social worker indicated father had been smoking marijuana throughout the case. Up until about March 2014, father had been doing some of his case plan. Recently, however, father was not "doing any services."

The social worker acknowledged that, shortly before the court-ordered family maintenance services, father "had a very violent blackout drunk episode in the household." But she acknowledged that, to her knowledge, he had not had any subsequent drunken episodes of violence and A.R. had not ever returned "from a visit uncared for." The social worker indicated that, during their visits, father played with A.R., A.R. was warm toward father, and they read together.

After being qualified as an expert in risk assessment, the social worker testified that, as far as she knew, father had been continually engaging in alcohol abuse. She indicated that father had blackouts due to alcohol consumption, he could not control his drinking when he drank, and he became violent when drinking. She was concerned that father was not in recovery, he was an alcoholic, and there was a high "potential" that he would drink again and become violent again.

As to A.R.'s visits with father, the paternal grandmother had been supervising them. If father had unsupervised contact with A.R., the child was at risk because of father untreated alcoholism, his ongoing substance abuse, and father's alcohol-related

10

behaviors, such as violence, blackouts, and impatience. She acknowledged that "when this case began and [father] also had family maintenance, [father] had an untreated drinking problem."

Consistent with her written reports, the social worker testified that, in June 2014, father told her that he would continue to drink and use marijuana. Father did not finish the Pathway's program because he was discharged for failing to abstain from alcohol and marijuana. In her opinion, father was not exercising good judgment in choosing to drink.

At the end of the school year in June 2014, father was supposed to attend A.R.'s school field trip to visit A.R.'s new school but father did not show up. A.R. was very upset with father and refused to see or talk to him for about two to three weeks. The social worker subsequently supervised some visits between father and A.R.; A.R. was able to warm up to father. Since that time, A.R. had looked forward to visits with father.

Father was allowed to visit A.R. only if he had not used alcohol or marijuana within the prior 24 hours. Since father had not been drug testing, the social worker could not say whether father had been complying with that visitation restriction. Mother had disallowed a visit with A.R. because father had been drinking.

In the social worker's opinion, the paternal grandmother could provide the structure and supervision to keep A.R. safe during visits with father. Since the court had ordered family maintenance services, the social worker had not personally seen father under the influence while he was with, or attempting to take, A.R. and she did not personally know of any reports of such behavior.

In its September 12, 2014 written order, the juvenile court found: "By clear and convincing evidence, the welfare of the child requires that his physical custody be taken from the father because there is or would be substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the child from the father's physical custody." As

11

indicated, the court ordered A.R. to "continue under the care, custody, and control of the mother, with supervision by the Department . . . ." It also ordered, "[t]he child and the mother shall continue to receive Family Maintenance Services." The court provided for visitation by father, supervised by the paternal grandmother, "a minimum of every other weekend, Friday-Sunday."

The juvenile court retained dependency jurisdiction and scheduled the case for further review under section 364.

## II

### *Discussion*

A. *Background and Governing Law*

1. *Child Retained in Parental Custody*

"In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all those limitations. Any limitation on the right of the parent or guardian to make educational or developmental services decisions for the child shall be specifically addressed in the court order. The limitations may not exceed those necessary to protect the child." (§ 361, subd. (a).)

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a).) "If a child is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300, and the court orders that a parent or guardian shall retain custody of the child subject to the supervision of the social worker, the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd. (c); *In re Pedro Z.* (2010)

12

190 Cal.App.4th 12, 20 ["services referred to in section 362, subdivision (b), [now subd. (c)] are not reunification services but *family maintenance services*"].) "The juvenile court may direct *any reasonable orders* to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . ." (§ 362, subd. (d), italics added.) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (*Ibid*.)

"Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing." (§ 364, subd. (a).) A family maintenance review hearing "must be held within six months after the date of the original dispositional hearing and no less frequently than once every six months thereafter as long as the child remains a dependent." (Cal. Rules of Court, rule 5.706(a).)[2]

At a family maintenance review hearing, "[t]he court must determine whether continued supervision is necessary." (Rule 5.706(e)(1), see § 364, subd. (c).) It "must terminate its dependency jurisdiction unless the court finds that the petitioner has established by a preponderance of the evidence that existing conditions would justify initial assumption of jurisdiction under section 300 or that such conditions are likely to exist if supervision is withdrawn." (Rule 5.706(e)(1).) "Failure of the parent . . . to participate regularly in any court-ordered treatment program constitutes prima facie evidence that the conditions that justified initial assumption of jurisdiction still exist and that continued supervision is necessary." (*Ibid*.) "If the court retains jurisdiction, the

---

[2]     All further references to the rules are to the California Rules of Court.

13

court must order continued services and set a review hearing within six months under this rule." (Rule 5.706(e)(2); see § 364, subd. (d).) " 'There is no statutory [time] limit on the provision of family maintenance services if the court believes the objectives of the service plan are being met.' (*Bridget A*. *v*. *Superior Court* (2007) 148 Cal.App.4th 285, 312; see § 16506.)" (*In re A.C*. (2008) 169 Cal.App.4th 636, 642.)

2. *Removal of a Child from Parental Custody*

Section 361, subdivision (c), provides in pertinent part: "A dependent child shall not be taken *from the physical custody* of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds *clear and convincing evidence* of any of the following circumstances . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health *can be protected without removing the minor from the minor's parent's or guardian's physical custody*. . . . The court shall consider, as a reasonable means to protect the minor, each of the following: [¶] (A) The option of removing an offending parent or guardian from the home. [¶] (B) Allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (Italics added.) The foregoing provision has been understood as permitting removal on broader grounds than "substantial danger to the physical health." (See Rule 5.695(d)(1) [Removal from parental custody permissible where there is clear and convincing evidence that "[t]here is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, or will be if the child is returned home, and there is no reasonable alternative means to protect that child"]; *In re H.E*. (2008) 169 Cal.App.4th 710, 718-722.)

14

"The elevated burden of proof for removal from the home . . . reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so. (See *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288; see also *In re Henry V.* (2004) 119 Cal.App.4th 522, 525.) By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' (*In re Jasmine G.*, *supra,* at p. 290.) Removal 'is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent.' (*In re Henry V.*, *supra*, at p. 525.)"[3] (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) The protections of section 361, subdivision (c), apply when the Department seeks to remove a minor from parental custody subsequent to disposition. (See *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

---

[3]     "When the court orders removal pursuant to Section 361, the *court shall order the care, custody, control, and conduct of the child to be under the supervision of the social worker* who may place the child in any" of a number of specified placements. (§ 361.2, subd. (e), italics added.) One of the placement options is "[t]he home of a noncustodial parent." (§ 361.2, subd. (e)(1).) "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) If the child is placed with a previously noncustodial parent, the court has a number of available options, including but not limited to ordering reunification services for the parent from whom the child is being removed or ordering family maintenance services solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision. (§ 361.2, subd. (b)(3).)

The "clear and convincing" standard specified in section 361, subdivision (c), governs the trial court but it is not the standard for appellate review. (*In re Walter E.* (1992) 13 Cal.App.4th 125, 139; *Crail v. Blakely* (1973) 8 Cal.3d 744, 750.) "We review an order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings. [Citations.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969; see *In re A.E.* (2014) 228 Cal.App.4th 820, 826.)

3. *Petition for Modification of Prior Order Based upon Changed Circumstances*

Section 388, subdivision (a)(1), provides in pertinent part: "Any . . . person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." "The change of circumstances may be a change in the circumstances of a parent which may make the modification of a prior order appropriate." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 674.)

"The petitioner requesting the modification under section 388 has the burden of proof." (Rule 5.570(h)(1); see *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; Evid. Code, §§ 115, 190, 500.) With a few exceptions, the petitioner seeking modification must satisfy a preponderance of evidence standard (See § 388, subds. (a)(2), (c), (d); Rule 5.570(h)(1); *In re M.V.* (2006) 146 Cal.App.4th 1048, 1057-1059 [removal from de facto parent]; *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1085-1086 [removal from grandmother who became legal guardian]; *In re Stephanie M.*, *supra*, at p. 317 [removal from foster placement].) The heightened standard of proof stated in section 361, subdivision (c), applies to an order removing a child, who was residing with a parent when the dependency petition was initiated, from the parent's physical custody pursuant

16

to a request for modification under section 388.[4] (See *In re M.V., supra,* at p. 1059 ["the clear and convincing standard is applied to protect the rights of parents and guardians, but it is applied to no one else".)

A petition for modification is "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. [Citations.]" (*In re Stephanie M., supra,* 7 Cal.4th at p. 318; see *In re M.V., supra,* 146 Cal.App.4th at p. 1059.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*In re Stephanie M., supra,* at pp. 318-319; *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 [under the abuse of discretion standard, findings of fact are reviewed for substantial evidence].) The factual findings necessary for removal of a child from parental custody pursuant to section 361, subdivision (c), must meet the substantial evidence test. (See *In re Walter E., supra,* 13 Cal.App.4th at p. 139.)

B. *Analysis*

Father challenges the September 12, 2014 order, arguing that there was no relevant change in circumstances after the January 3, 2014 disposition to support modification. He asserts that, at the time of disposition, he was an admitted alcoholic, he had not yet begun treatment, he was only sporadically attending AA meetings and he had no sponsor, he was using marijuana, and he was sporadically drug testing. Father further argues that there had been a fairly recent domestic violence incident between parents (September 16, 2013) at the time of disposition but there was no recent incident of domestic violence

---

[4]     Prior to its January 2014 amendment, rule 5.570(h)(1)(A) provided: "If the request is for the removal of the child from the child's home, the petitioner must show by clear and convincing evidence that the grounds for removal in section 361(c) exist."

when the court ruled on the section 388 petition. Father also maintains that the court's removal findings were not supported by substantial evidence, removal was unnecessary because he was no longer living with mother and A.R., and the court failed to consider a less drastic alternative than removal. The Department asserts that it made the necessary showing and the September 12, 2014 order should be affirmed.

We agree that the court abused its discretion by making removal findings. We first observe that the section 388 petition did not seek to remove A.R. from father's physical custody pursuant to section 361, subdivision (c). Rather, it asked the court to order "[t]hat the child be removed from Family Maintenance with the father and that the child remain in Family Maintenance with the mother" and that father be provided supervised visitation with A.R.

Secondly, although the parents retained custody subject to the Department's supervision at disposition, the evidence established that the parents themselves had subsequently made custodial changes and were no longer sharing physical custody of A.R. In response to this court's request for supplemental briefing, the parties agree that, after father moved out of the home where he had lived with A.R. and mother, the existing de facto arrangement between A.R.'s parents was that A.R. resided full time with mother under her supervision and father had visitation. They also agree that, after father moved out of the home where he lived with A.R. and mother, A.R. was not in father's care for any substantial period amounting to physical custody. Thus, A.R. was not actually in father's physical custody when the court made the removal findings.

The evidence was insufficient to support findings that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor *if the minor were returned home*" and there are *no reasonable means* of protecting the minor without removal. (§ 361, subd. (c)(1), italics added.) As indicated, the statute specifies that "removing an offending parent or guardian from the home" may under the particular circumstances constitute "a reasonable means to protect

18

the minor" without removing a child from a parent's physical custody. (§ 361, subd. (c)(1)(A).) Here, father had already removed himself from the home. There was no evidence that father intended to move back into the home where A.R. resided with mother or that father was not abiding by mother's limits on his visitation. Although the social worker testified that A.R. would be at risk *if* father had unsupervised contact with A.R. because of father's untreated alcoholism, his ongoing substance abuse, and his past alcohol-related conduct, in the recent months preceding the hearing mother had not allowed father to have unsupervised visits and father had been participating in supervised visits. The September 12, 2014 addendum report indicated that "father's visits have been appropriate." Even viewing the evidence in a light most favorable to the juvenile court's removal findings as required (see *In re Mariah T.* (2008) 159 Cal.App.4th 428, 441), the evidence was insufficient to establish the existence of a "substantial danger" within the meaning of section 361, subdivision (c).

We do not agree, however, with father's characterization of the changed circumstances as insufficient to support modification. The Department's dispositional recommendation that the juvenile court allow A.R. to remain in the home with family maintenance services for both parents was based on the social worker's assessment that the parents were already engaging in services and making progress. That circumstance was no longer true for father at the time the court granted the section 388 petition. Father was no longer engaging in services, he was making no progress toward achieving sobriety, and he apparently had no intention of working toward the elimination of the problems giving rise to the dependency. In addition, as discussed, the parents had changed their custodial arrangements in that father had moved out of the home where A.R. lived with mother, mother was exercising sole physical custody, father had not sought to share custody, and he was visiting A.R. on occasion.

To support modification of a prior order, "[t]he change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is

19

appropriate. [Citation.]" (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.) We observe that family maintenance services are provided "in order to maintain the child in his or her own home." (§ 16506.) The court's provision of family maintenance services only to A.R. and mother was consistent with father's rejection of services. The court's changes to physical custody reflected the changes already made by the parents. Where the custodial father moves out of the home and acquiesces in the custodial mother's assumption of sole physical custody of the child for the foreseeable future and father has stopped engaging in services, abandoned any intention or effort to comply with his case plan, and continued to use alcohol and marijuana in contravention of his case plan, a juvenile court does not abuse its discretion by modifying its prior orders to reflect the parents' current physical custody arrangements and formally discontinuing family maintenance services to father. (See *In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.)

Insofar as we can discern, the Department nevertheless suggests that the juvenile court was obligated to make removal findings before modifying its prior orders because the court's dispositional order allowed both parents to retain custody of A.R. and the dispositional order did not distinguish between physical custody[5] and legal custody.[6]

---

[5] " 'Joint physical custody' means that each of the parents shall have significant periods of physical custody. Joint physical custody shall be shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents, subject to Sections 3011 [considerations in determining a child's best interest] and 3020 [legislative declaration of public policy]." (Fam. Code, § 3004.) One of the considerations in determining a child's best interest is "[t]he habitual or continual illegal use of controlled substances, the habitual or continual abuse of alcohol, or the habitual or continual abuse of prescribed controlled substances by either parent." (Fam. Code, § 3011, subd. (d).) " 'Sole physical custody' means that a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation." (Fam. Code, § 3007.)

[6] " 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) " 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and (continued)

20

We see no principled basis for that position under the particular circumstances of this case. With regard to family maintenance review, the Department was no longer recommending that the court terminate dependency jurisdiction and make exit orders placing A.R. in mother's sole physical and legal custody but rather was recommending that the court provide continued family maintenance services to mother and supervised visitation for father. The Department's section 388 petition did not seek to change legal custody and there was no evidence that legal custody was a matter of dispute between the parents or a matter of concern to the Department. (See fn. 5, *ante*.) It is not reasonable to conclude that juvenile court's September 12, 2014 order implicitly divested father of legal custody of A.R.

"When a child is adjudged a dependent of the juvenile court, any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court, as specified in Sections 304, 361.2, and 362.4, so long as the child remains a dependent of the juvenile court." (§ 302, subd. (c).) "While the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court. In deciding issues between the parents . . . regarding custody of a child who has been adjudicated a dependent of the juvenile court, the juvenile court may review any records that would be available to the domestic relations division of a superior court hearing that matter."[7] (§ 304.) It is up to the Department to properly present the

welfare of a child." (Fam. Code, § 3006.) Sole physical custody to one parent can be consistent with joint legal custody. (See Fam. Code, § 3085.)

[7]     In its final order terminating dependency jurisdiction, the juvenile court may determine custody of, and visitation with, the child. (See § 362.4; Rule 5.700; JV-200 [mandatory Judicial Council form]; JV-205 [mandatory Judicial Council form].) "Any custody or visitation order issued by the juvenile court at the time the juvenile court terminates its jurisdiction pursuant to Section 362.4 regarding a child who has been previously adjudged to be a dependent child of the juvenile court shall be a final judgment and shall remain in effect after that jurisdiction is terminated. The order shall not be modified in a proceeding or action described in Section 3021 of the Family Code (continued)

issue of legal custody to the court. (See *Troxel v. Granville* (2000) 530 U.S. 57, 66 ["the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"]; *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 542 ["An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' [Citation.]"].)

We conclude that the juvenile court's removal findings must be stricken because they are unsupported by substantial evidence. The error is harmless, however, because the court did not actually remove A.R. from the physical custody of father and A.R. continues in the physical custody of mother, who has always been a custodial parent.

DISPOSITION

The September 12, 2014 order is modified by striking the removal findings. As modified, the order is affirmed.

---

unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.


*In re A.R.*; *DFCS v. J.R.*

H041463

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-13-JD22132 |
|---|---|
| Trial Judges: | Hon. Katherine Lucero<br>Gregory H. Saldivar |
| Counsel for Plaintiff/ Respondent:<br>Santa Clara County Dept. of Family &<br>Children's Services | Office of the County Counsel, Child Dependency Unit<br>Orry P. Korb, County Counsel<br>Teri L. Robinson, Deputy County Counsel |
| Counsel for Defendant/Appellant:<br>J.R. | Sixth District Appellate Program;<br>Leslie Ann Barry |

*In re A.R.*; *DFCS v. J.R.*

H041463