Filed 8/27/15  In re K.S. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.S., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>B.R.,<br><br>　　　Defendant and Appellant. | A144060<br><br>(Humboldt County<br>Super. Ct. No. JV140203) |

K.S., the son of appellant B.R. (Father) and T.S. (Mother), was detained from Father's custody by the Humboldt County Department of Health and Human Services (Agency) on allegations that Father neglected him.  At the time, Mother was living in Oregon.  Following K.'s detention, the Agency found Mother to be a suitable caregiver.  The juvenile court removed K. from Father's care, granted Mother legal custody, and terminated dependency jurisdiction.  Father contends the trial court's findings that he posed a substantial danger to K. and Mother presented no risk of detriment were not supported by substantial evidence.  We affirm.

## I.  BACKGROUND

K., then three years old, was the subject of a dependency petition under Welfare and Institutions Code[1] section 300, subdivisions (b) and (g), filed November 5, 2014.

---

[1] All statutory references are to the Welfare and Institutions Code.

The petition alleged Father had been arrested recently on drug-related charges and, prior to his arrest, had placed K. in danger while the two were homeless. In addition, it was alleged Father had not made provision for K.'s care while he was incarcerated and Mother was unable to take custody because she was living in Oregon. K. was detained and placed in foster care.

The Agency's detention report stated that Father was terminated from his employment and evicted from his apartment about four months before the detention. He moved to a homeless encampment with K., where Father was assaulted in what was apparently a drug-related dispute. K. witnessed the assault and was disturbed by it. Thereafter, Father signed a "Safety Plan" with the Agency, and the Agency arranged for the two to live at a motel. Throughout this period, Father was reputed to be a drug dealer, and he was said to leave K. unattended or with strangers. Father was also reported to have shot another man during an attempt to collect a debt, and there were concerns the victim might retaliate.

K. was detained after Father was arrested. According to a police press release, Father was detained on an arrest warrant for brandishing a weapon, assault, and battery. During a vehicle search, police located over an ounce of methamphetamine packaged for sale, marijuana concentrate, and a "large amount" of cash. Father had suffered earlier felony convictions for a variety of crimes in 1997, 2001, and 2006.

At the time of K.'s detention, Mother was living in Oregon. While living in California between 2006 and 2011, she had been investigated repeatedly by the Agency in connection with alleged neglect of her children, often in association with alcohol abuse. Father was similarly investigated for child neglect in 2013 and 2014, also in connection with drug and alcohol abuse. In March 2014, the family court granted legal custody of K. to Mother, but the order was stayed at Father's request.[2] Mother later

---

[2] The report also stated, without citing a source, that legal custody of K. had been awarded to Father 10 months prior to the detention because of Mother's excessive drinking. The Agency provided no explanation for the apparent contradiction. Because

2

explained that she then abandoned her efforts to gain custody of K. because "[t]he trips down from Oregon were expensive and she was nervous of coming into conflict with [Father]," whom she feared.

When contacted by the Agency at the time of K.'s detention, Mother asked to be granted custody of K. through the dependency proceedings. Mother told a social worker she had completed a program of substance abuse treatment while in Oregon and had not abused alcohol in the last two years.

In the detention report, the Agency noted that prior to any grant of custody to Mother, "she should be able to demonstrate her ability to not be under the influence when she is caring for [K.]" and said she would be required to undergo a "home evaluation." By the time of the jurisdictional report, filed a month later, Mother had been allowed a visit with K., and it went well. Accordingly, the Agency recommended granting temporary custody to Mother, and the juvenile court authorized the release of K. to Mother pending the dispositional hearing. In the dispositional report, the Agency concluded that K. was "safe in the care of his mother," who had "remained in contact with the [Agency] and has been able to adequately care for [K.]" since his detention.

At the dispositional hearing, Father testified that he had continuous physical custody of K. since the boy was a few months old. Father held a job for most of that time, but he became homeless for a period of a month and a half prior to K.'s detention. During the entire time Father had custody of K., Mother had a single, 45-minute visit. Father said he had pleaded guilty in connection with the charges resulting from his arrest. While he had not been sentenced, he believed he would be placed on probation rather than incarcerated.

The trial court awarded permanent legal and physical custody to Mother and terminated the dependency proceeding, finding "we have a noncustodial parent who appears to be able and willing to assume custody, . . . and the Court doesn't find it would

the report attached a copy of the court order granting custody to Mother, the report of a grant of custody to Father was presumably false.

be detrimental to the child or in the child's best interest to continue a dependency proceeding." Additionally, the court found by clear and convincing evidence that there was a "substantial danger" to K.'s safety if he were returned to Father and found no reasonable means of protecting K. other than his removal from Father's custody.

## II. DISCUSSION

Father appeals the juvenile court's dispositional order, contending the court erred both in removing K. from his custody and in granting custody to Mother.

Section 361, subdivision (c)(1) precludes the juvenile court from removing a child from the custody of a parent unless it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (See *In re Ethan C.* (2012) 54 Cal.4th 610, 625.) The statute's clear and convincing evidentiary standard " 'demonstrates the "bias . . . is on family preservation, *not* removal." [Citation.] Removal "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent." ' " (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1115.) While the juvenile court must apply the clear and convincing standard, " '[w]e review an order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings.' " (*Id.* at p. 1116.)

After the juvenile court removes a child from parental custody under section 361, "the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) If a qualifying noncustodial parent is located, the court has the discretion to (1) grant legal and physical custody of the child to the noncustodial parent and terminate dependency jurisdiction; (2) grant

4

provisional custody pending a home visit; or (3) grant custody under court supervision, while requiring the provision of reunification services to one or both parents. (*Id.*, subd. (b).)

Denial of custody to a noncustodial parent under section 361.2 requires clear and convincing evidence that placement would be detrimental. (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401.) "The [noncustodial] parent does not have to prove lack of detriment. Rather, the party opposing placement with a [noncustodial] parent has the burden to show by clear and convincing evidence that the child will be harmed if the [noncustodial] parent is given custody." (*Id.* at p. 1402.)

Father first contends the juvenile court's decision to remove K. from his custody was not supported by clear and convincing evidence of a "substantial danger" to K.'s well-being and argues any concerns about his parenting could have been addressed by means short of removal.

The account of Father's activities in the weeks preceding K.'s detention provides substantial evidence of a threat to K. in Father's care. Father engaged in a variety of unlawful activities, at times involving violence and exposing Father to the threat of arrest and detention. These activities placed K.'s safety and well-being in substantial danger, both because they exposed K. to the possibility of violence and because they created a risk he would be left without supervision and care. Indeed, at the time of the dispositional hearing the possibility remained that Father would be imprisoned. Father argues there is no evidence he neglected K. during the years prior to the events detailed in the Agency reports. While that may be true, Father's recent criminal behavior was not novel or unprecedented. He suffered felony convictions for a variety of crimes in 1997, 2001, and 2006. This suggests his criminal behavior is part of a repeating pattern of conduct, rather than an aberration.

We also find no abuse of discretion in the juvenile court's conclusion there was no reasonable alternative to removing K. from Father's custody. Father argues his misconduct was being "resolved through a safety plan," but Father had already agreed to the safety plan when he engaged in the conduct leading to his arrest. Plainly, the safety

5

plan provided no assurance he would act in K.'s best interests. It was reasonable for the juvenile court to conclude there was no reliable means short of removal to protect K. from risk.

Father also contends the juvenile court erred in concluding Mother was a suitable noncustodial parent, but we find little evidence to suggest placement with Mother will be detrimental to K. It is certainly true that in past years Mother's alcohol abuse rendered her unsuitable. The most recent report of neglectful conduct, however, was 2011. By the time of the proceedings, Mother had moved away from Father, completed a substance abuse treatment program, and remained sober for two years. Less than a year prior to the juvenile court's decision, the family court had granted her legal and physical custody of K. The evidence of her past conduct could therefore be discounted, and there was no evidence, let alone clear and convincing evidence, to suggest Mother presented a current risk of detriment to K.

Father argues Mother presents a threat to K.'s emotional health because he is unfamiliar with Mother, who apparently had little contact with K. prior to the dependency proceedings. Mere unfamiliarity, however, does not constitute clear and convincing evidence of a risk of detriment. Mother's efforts to gain custody of K. through the family court demonstrate her lack of contact with K. was not the result of indifference. By the time of the dispositional hearing, K. had been living with her for two months, and there was no report of problems.

We agree with Father the Agency could have satisfied any doubts raised by Mother's past behavior by conducting a more formal investigation into her present circumstances. Yet the Agency was well aware of Mother's checkered history and the need for caution. It had substantial contact with Mother during the course of the dependency proceedings, and that contact satisfied the Agency with respect to her competence. Ultimately, the Agency was under no burden to prove Mother's suitability. Rather, the burden was on Father to demonstrate unsuitability, and he failed to carry that burden.

Given the lack of evidence of Mother's present unsuitability, we find no abuse of discretion in the juvenile court's decision to grant Mother full custody and terminate the dependency proceedings.

## III.  DISPOSITION

The juvenile court's dispositional order is affirmed.

 

                                             _____

                                             Margulies, J.

We concur:

_____

Humes, P. J.

_____

Dondero, J.

A144060