Filed 3/9/16  In re D.V. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re D.V., a Person Coming Under the Juvenile Court Law. | B262198 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.V. SR.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK87942) |

APPEAL from an order of the Superior Court of Los Angeles County.  Marguerite Downing, Judge.  Affirmed.

Nancy E.B. Nager, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jacklyn K. Louis, Deputy County Counsel, for Plaintiff and Respondent.

_____

One-year-old D.V. lived with appellant D.V. Sr. (father), when he was detained. Father was not, however, named in the Welfare and Institutions Code section 300 petition. Instead, dependency jurisdiction was based solely on mother's drug use and failure to reunify with D.V.'s half-siblings. (Welf. & Inst. Code, § 300, subds. (b), (j).)[1] On appeal, father contends: (1) the disposition order removing D.V. from father's custody was not supported by sufficient evidence and (2) it was an abuse of discretion to order father to participate in drug testing and a drug treatment program.[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rules of appeal from a disposition order (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1115 (*A.R.*)), the evidence established that mother was homeless when D.V. was born in August 2013. Father, who lived in a single family home on the 1200 block of Towne Avenue in Los Angeles, picked up D.V. at the hospital and D.V. lived with father until he was detained more than one year later. During that time, mother lived there occasionally.

A.     *Referral, Protective Custody Warrant and Detention*

On October 29, 2013, the Department of Children and Family Services (DCFS) received a general neglect referral for D.V., then known as "Baby Doe." The "referral address" was father's home on Towne Avenue, but DCFS social worker Maresca did not

---

[1]     All future undesignated statutory references are to the Welfare and Institutions Code. Mother is not a party to this appeal.

[2]     Father also challenged the monitored visits condition. But on December 18, 2015, father was given unmonitored visits. DCFS moved to dismiss as moot the portion of father's appeal challenging the monitored visits condition of the disposition order. In his response to the motion, father stated that he would not be filing any opposition. Because father currently has unmonitored visits, the issue of whether it was error to order monitored visits is now moot and we do not address it. (See *Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827 [in appeal challenging TRO on grounds of notice and merits, after the notice issue rendered moot by subsequent proceedings, the appellate court considered merits challenge].)

know that.  When Maresca went to father's home to investigate on October 31, 2013, the adult male who answered the door said he lived there alone and did not know anyone by mother's name.

From Department of Public Social Services (DPSS) records, Maresca learned that mother had been homeless since June 2013.  Maresca contacted mother's DPSS social worker and the social worker assigned to a dependency case involving D.V.'s half-siblings.[3]  The DPSS social worker reported that mother picked up her aid at the DPSS office on Central Avenue; mother appeared intoxicated the last time the DPSS social worker saw her.  From the half-siblings' social worker, Maresca learned that DCFS was also looking for half-sibling K.B., whom DCFS suspected was being prostituted by mother.

On December 18, 2013, the DPSS social worker provided Maresca with a telephone number for mother.  Unbeknownst to Maresca, it was father's telephone number.  The next day, Maresca made contact with mother at that number and told mother about the referral for "Baby Doe."  Mother said "Baby Doe" had been named D.V.; D.V. was living with father and mother had not seen him for three months.[4]  Mother would not provide her own contact information to Maresca and said she did not know father's address or telephone number.  That, of course, was untrue since mother was speaking to Maresca on father's telephone.

On December 20, 2013, half-sibling E.H.'s father told Maresca that mother was living with her "boyfriend," D.V., mother's 18-year-old son and half-sibling K.B. at an address on Towne Avenue.  Since it was father's home address, it is reasonable to infer that the "boyfriend" was father.  E.H.'s father told Maresca that both mother and father

---

**3** D.V. was the youngest of mother's seven children, D.V.'s half-siblings.  The half-siblings are:  D.B. (born in 1996 and killed in a gang shooting in 2014); K.B. (born 1999; mother's Family Reunification (FR) terminated in 2012); Q.B. (born 2000; mother's FR terminated in 2012); C.M. (born 2002; status unknown); M.B. (born 2005; status unknown); and E.H. (born 2012; "Non-reunification" ordered in 2013).

**4** If mother's timeline is credited, D.V. was in father's sole custody when the referral was made in October 2013.

abused marijuana and alcohol. Maresca tried but once again failed to make contact with mother at father's home.

On December 26, 2013, DCFS filed a section 300 petition alleging dependency jurisdiction based on mother's history of substance abuse which had resulted in her losing custody of three half-siblings (§ 300, subds. (b) and (j)). The petition named father but no conduct by father was alleged as the basis of dependency jurisdiction. The petition stated father's whereabouts were unknown but identified father's Towne Avenue address as mother's address.

That day, the juvenile court issued a protective custody warrant for D.V., which remained in effect until D.V. was detained almost nine months later on September 16, 2014.[5] A jurisdictional hearing was scheduled for October 7, 2014.

B.     *Jurisdiction and Disposition*

When father was interviewed at the DCFS office on September 25, 2014, he denied that he abused drugs or alcohol and denied ever seeing mother smoke marijuana or cocaine. Father was not concerned that mother drank "a couple beers."

Father and mother both appeared on October 7. Father filed a Notification of Mailing Address which listed the Towne Avenue address as his address. Mother's Notification of Mailing Address identified the DPSS office as her address, but gave father's telephone number. Father was declared D.V.'s presumed father. Father asked that D.V. be immediately returned to him or, alternatively, for a pre-release investigation (PRI) report. The matter was continued to October 15, 2014 for a PRI hearing as to father and to December 11, 2014 for adjudication.

The PRI report revealed that father had a 2010 domestic violence arrest (father had since completed domestic violence counseling) and a history of arrests and convictions related to possession of marijuana for sale. The report described father's home as "very neat and clean and the father has lived in the home for one year and four months. The

---

**5**     D.V. was detained when mother and father brought D.V. to a juvenile court hearing regarding one of D.V.'s half-siblings.

4

home has all accommodations (beds and closet space) for the child. The father has everything he needs for the baby including a crib, baby tub, diapers, toys, car seat and plenty of clothing. [D.V.] will share a room with his father as it is a small one bedroom home. The father reports no other persons reside in the home." But the veracity of father's statement that he lived alone was undermined when the social worker called father not long after she left the house and mother answered the phone. DCFS recommended against placing D.V. with father because father failed to protect D.V. when D.V. was living with father and it appeared mother was still living in father's home. The juvenile court ordered D.V. to remain detained pending the jurisdiction hearing on December 11, 2014.

Following a physical examination on December 3, 2014, D.V. was diagnosed with three conditions: (1) fetal alcohol syndrome (FAS), (2) developmental delay; and (3) failure to thrive. The doctor attributed both the developmental delay and the failure to thrive in part to the FAS. Additionally, the failure to thrive was caused by insufficient nutrition while in the custody of the biological parents. As a result of these conditions, D.V. already demonstrated delays in language, fine motor skills, swallowing and chewing "and likely in cognitive areas. This is consistent with diagnosis of FAS and microcephaly (organic brain damage)." The doctor believed D.V. "will likely have serious developmental disabilities and special needs and need to have parents able to dedicate themselves to his care. Will need stable, nurturing home focused on his development and care." DCFS reported these findings to the juvenile court in a Last Minute Information filed on December 11, 2015, the day of the jurisdiction hearing.

There was no testimony at the hearing. In addition to the Last Minute Information and medical report, the juvenile court received into evidence the detention, jurisdiction and PRI reports and attachments. Based on this evidence, the court sustained the petition, finding D.V. to be a dependent child pursuant to subdivisions (b) and (j) of section 300 based on mother's substance abuse and failure to reunify with the half-siblings.

Regarding disposition, father argued D.V. should be returned to father because father was nonoffending, was unaware of the protective custody warrant and DCFS had

5

made no effort to contact him even after mother told the social worker father's name during the telephone call on December 20, 2013. DCFS and counsel for D.V. opposed returning D.V. to father's custody. In addition to evidence that mother was still living with father, DCFS argued that whether or not a supplemental petition was filed alleging father had failed to protect D.V., the medical report established that father had in fact done so and for that reason D.V. could not be safely returned to father's custody.

The juvenile court found by clear and convincing evidence that removal was the only reasonable means to protect D.V.'s physical and emotional health. Recognizing that father was "nonoffending" the court observed that father "is going to have to do some programming to show the court he can follow the court orders since the parents failed to comply with the court's earlier orders." The disposition order gave father monitored visits (later changed to unmonitored) and directed him to participate in random drug testing and individual counseling to address "co-dependency, substance abuse awareness, child protection." DCFS was given discretion to liberalize father's visits.

Father timely appealed.

## DISCUSSION

A.    *Sufficient Evidence Supports the Removal Order*

Father contends the finding that D.V. could not be safely returned to his custody was not supported by substantial evidence. He argues there was no evidence that return to father posed any risk of detriment to D.V. and no evidence that there were no reasonable means to protect D.V. other than removal. More specifically, father argues there was no evidence he knew about the protective custody warrant before D.V. was detained and he should not be held responsible for D.V.'s failure to thrive while in father's custody. We find no error.

We review an order removing a child from parental custody for substantial evidence. (*A.R., supra,* 235 Cal.App.4th at p. 1115.) Substantial evidence is evidence which is reasonable, credible, and of solid value. " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.'

6

[Citation.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.) The party challenging the juvenile court's findings and orders bears the burden of showing that they are not supported by substantial evidence. (*In re F.S.* (2016) 243 Cal.App.4th 799, 812.) Father has failed to meet that burden.

Because D.V. was living with father at the time the petition was filed in December 2013, removal is governed by section 361, subdivision (c).[6] In relevant part, that subdivision reads: "A dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of" one of five specified circumstances. (§ 361, subd. (c).) Relevant here is the circumstance that there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) The focus of the statute is on averting future harm but a parent's past conduct is relevant to the decision. (*In re F.S., supra,* 243 Cal.App.4th at p. 813.) And a parent's "documented untruthfulness with DCFS in the past," gives the juvenile court reason to reject a parent's assurances that the child is not at future risk. (*Id.* at p. 815.)

" 'Removal "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent." [Citation.]' [Citation.]" (*A.R., supra,* 235 Cal.App.4th at p. 1115.) Section 361, subdivision (c)(1) identifies two reasonable means to avoid removal: (A) removing an offending parent from the home or (B) allowing the "nonoffending parent or guardian to retain custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subd. (c)(1)(A), (B).) The term "nonoffending parent" refers to a custodial parent who is not the perpetrator of any child abuse or neglect. (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1505.)

---

**6**     Placement with a non-custodial parent is governed by section 361.2.

Here, there was substantial evidence that return to father on December 11, 2015, would place D.V. at risk of future detriment and there was no reasonable means to protect D.V. other than removal. These facts were undisputed: (1) D.V. lived with father from the time he was born until he was detained about one year later; and (2) D.V. suffered from failure to thrive attributable in part to insufficient nutrition while in father's custody. There was no evidence that father obtained any medical help for D.V. while D.V. was in his custody, including the usual "well baby" checkups. Father's past failure to properly care for D.V. while D.V. was in his custody is evidence from which it can reasonably be inferred that D.V. could not safely be returned to father's custody. The juvenile court could reasonably conclude that father's completion of two individual counseling sessions and six sessions of a parenting class was not enough to assure D.V.'s safety in father's custody.

That father was "nonoffending," in that dependency jurisdiction was not based on any conduct by father, also does not compel a contrary result. Section 361, subdivision (c)(1)(A) and (B) apply only to nonoffending parents. The fact that a custodial parent is nonoffending is a necessary prerequisite to a finding under that statute but it does not automatically follow that a child of a nonoffending parent may safely be returned to that parent. There must also be a showing that either the *offending* parent can be removed from the home (§ 361, subd. (c)(1)(A)) or the nonoffending parent has "a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subd. (c)(1)(B).) There was no such showing. From the evidence that father told the PRI investigator that he lived alone but mother answered father's telephone later that same day, the juvenile court could reasonably conclude that mother was living with father and father was not being truthful with the PRI investigator. Thus, the court had reason to believe that mother could not be removed from the home. There was also no evidence that father had a plan to protect D.V. from mother in the future.

Father's argument that he did not know about the protective custody warrant until D.V. was detained is not persuasive. Even assuming father did not know about the

8

warrant, there was substantial evidence from which the juvenile court could conclude father was helping mother to evade DCFS.  Specifically, it is reasonable to infer that father was the man social worker Maresca spoke to at father's home on December 20, 2013, and that father lied when he told Maresca that he did not know mother.  Father's home was one of several locations to which notice of the February 5, 2014 jurisdiction hearing was mailed to mother.

B.      *No Abuse of Discretion to Order Drug Testing and Drug Program Participation*

Father contends it was an abuse of discretion for the juvenile court to include orders that father drug test and participate in a drug treatment program in the disposition order.  He argues there was no evidence that father used or abused drugs or alcohol.  We disagree.

The juvenile's court's exercise of discretion to create a dispositional order that will best serve and protect the child's interests will not be reversed in the absence of a clear abuse of that discretion.  (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)  In reviewing a disposition order for abuse of discretion, we " ' "must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.  [Citation.]  The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child." ' [Citation.]" (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187 (*Natalie A.*).)

In fashioning a dispositional order, the juvenile court is not limited to addressing the problems described in the sustained section 300 petition.  It is not even necessary for there to be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order.  (*In re Briana V., supra*, 236 Cal.App.4th at p. 311.)

*Natalie A.* offers guidance.  In that case, dependency jurisdiction over three children, all under six years of age, was based on the mother's substance abuse; all three were returned to the father's custody.  Based on two incidents in which father left the children without adult supervision, the juvenile court sustained a supplemental petition alleging the father's current marijuana abuse rendered him incapable of caring for the

9

children.  On appeal, the father challenged the sufficiency of the evidence to support jurisdiction arguing his occasional use of marijuana did not constitute "abuse" and that it was an abuse of discretion to order him to drug test and complete a drug treatment program.  The appellate court affirmed the jurisdiction order, reasoning "the juvenile court could reasonably have inferred a nexus between father's drug use and his failure to ensure his young children were safely cared for and supervised." (*Natalie A., supra,* 243 Cal.App.4th at pp. 185-186.)  It also affirmed the disposition order reasoning the "evidence established that father's marijuana abuse posed a substantial risk to the children in light of their very young ages." (*Id.* at p. 187.)

Like the order in *Natalie A.*, the dispositional order in this case was supported by the evidence and was rationally tailored to protect D.V.'s best interest.  General neglect, evidenced by the failure to thrive diagnosis, is the condition that led to D.V.'s dependency.  The failure to thrive was attributable to insufficient nutrition.  Although the petition did not name father, the evidence showed that D.V. was living with father during the relevant time period.  A witness told the social worker that father and mother were both current substance abusers.  Although father denied the charge, it is corroborated by father's drug-related criminal history.  On this record, the juvenile court could reasonably have inferred that father had a substance abuse problem and that there was a nexus between father's substance abuse and his failure to ensure that D.V. was properly cared for.  It was not an abuse of discretion for the juvenile court to conclude that drug testing and drug treatment programs for father were reasonably necessary to eliminate the conditions that led to D.V.'s dependency.

## DISPOSITION

The disposition order is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.                                    GRIMES, J.

10