Filed 8/18/20  In re V.L. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| In re V.L. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B295993 <br> (Los Angeles County <br> Super. Ct. No. DK23383) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> JESSICA L. et al., <br><br>    Defendants. <br><br> E.L. et al., <br><br>    Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

The Haynes Law Firm and Crista Hayes for Appellants.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Maternal grandparents E.L. and M.L. appeal from the juvenile court's summary denial of their Welfare and Institutions Code[1] section 388 petition requesting custody and placement of their grandchildren, V.L. (born January 2008), M.L. (born September 2012), and K.C. (born March 2016). Though we sympathize with maternal grandparents' desire to have an active role in raising the children, we cannot say that the juvenile court abused its discretion in denying the section 388 petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We recite the facts and procedural background based on the allegations set forth in maternal grandparents' section 388 petition.[2]

Beginning in January 2008, Jessica L. (mother) and the children lived in maternal grandparents' home. In October 2016, maternal grandparents expressed concern over mother's drug use and mental

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The record in this case is quite limited. It consists of the operative section 388 petition for all three children, minute orders summarily denying the petition, a request for disclosure of the juvenile case file, and maternal grandparents' notice of appeal.

health, leading mother to leave with the children. Between October 2016 and February 2017, the children lived with mother in maternal great-grandmother's home, after which mother and the children left and could not be found.

The children came to the attention of the Los Angeles Department of Children and Family Services (DCFS) around July 2017, when maternal grandparents filed missing persons reports for mother and the children. After reviewing the reports, the juvenile court issued a bench warrant, and mother was arrested. Following her arrest, DCFS removed the children from her and Kelvin C.'s (father's) care, filed a section 300 petition based on allegations of "Physical Harm, Failure to Protect, and Abuse of a Sibling," and placed the children in the care of paternal grandmother, Maria C. At a hearing on August 23, 2017, the juvenile court removed the children from parents' custody and placed them in the custody of Maria C.

The children's placement with Maria C. notwithstanding, maternal grandparents sought placement of the children and submitted a Resource Family Approval (RFA) application.[3] Maternal grandparents understood there could be issues placing the children in their care, as mother had alleged that maternal grandfather sexually abused one of the children and molested mother when she was a minor.

---

[3] The RFA process is "a unified, family friendly, and child-centered resource family approval process to replace the existing multiple processes for licensing foster family homes, . . . approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families." (§ 16519.5, subd. (a).)

Maternal grandfather denied the allegations and asserted that mother had recanted in an October 2016 letter wherein she stated, "I guess some memories weren't true."[4] Maternal grandfather also alleged that mother had threatened to make false accusations if he or anyone else attempted to take the children from her. In his view, "[i]t was clear to [the social worker] that [mother's] allegations were false and not supported by any iota of evidence."

During a November 22, 2017 visit with the children, maternal grandparents noticed that V.L. had sustained injuries to her face and hands. One week later, maternal grandparents filed a section 388 petition seeking regular and frequent visits with the children. The court granted the petition and ordered monitored visitation with the children twice per month.

According to maternal grandfather, he and his wife were verbally advised in February 2018 that their RFA application had been denied "because of the unresolved and unsubstantiated allegations of abuse by mother against me.[5] To present date, we have never received a Notice

---

[4]     Maternal grandparents attached numerous exhibits in support of their section 388 petition. One of the exhibits—mother's October 2016 letter—is blacked out and illegible. We recite the quotation from the letter as alleged in the section 388 petition.

[5]     An RFA application will be approved if the family has successfully met the home environment assessment standards and the permanency assessment criteria set forth under the RFA statutes. (§ 16519.5, subd. (c)(1).) A family home environment assessment includes a criminal record clearance for each applicant and all "denizens" (meaning all adults residing in or regularly present in the home), consideration of any substantiated child abuse allegation against the applicant and any denizens, and a home and

4

of Action for this verbal denial, and therefore we cannot yet appeal the decision."

At an adjudication hearing on August 10, 2018, the court sustained an amended section 300 petition against the parents,[6] ordered the children removed from their custody, and placed the children under the supervision of DCFS. The court ordered that mother receive monitored visitation, reunification and counseling services, and a psychiatric evaluation. In light of father's recent incarceration, the court did not order reunification services for him.[7] The court set a six-month review hearing for February 2019.

At a monitored visit with the children on November 30, 2018, the grandparents noticed that V.L. had sustained an injury to her nose. The child told maternal grandparents that she had sustained the injury one week prior, that she had not seen a doctor for an examination, and

---

grounds evaluation. (§ 16519.5, subd. (d)(2).) A permanency assessment includes a psychosocial assessment of an applicant and the results of a risk assessment, which includes, but is not limited to, the applicant's physical and mental health, alcohol and other substance abuse, family and domestic violence, and the applicant's understanding of children's needs and development. (§ 16519.5, subd. (d)(3).)

[6] The court sustained two section 300, subdivision (b) counts against mother, and four subdivision (b) and (j) counts against father.

[7] According to maternal grandparents, in denying reunification services to father, the court relied on section 361.5, subdivision (e)(1). That provision states, inter alia, that "[i]f the parent or guardian is incarcerated, institutionalized, or detained . . . , the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child."

that she and the other children were not getting care from a doctor. Maternal grandparents informed the visiting monitor and called the Child Abuse Hotline to report the injury. During other unspecified visits, maternal grandparents observed the children with untreated cold-like symptoms. Maternal grandparents also suspected Maria C. of permitting unscreened adults to live in her home with the children.

On January 11, 2019, maternal grandparents filed the operative section 388 petition in which they sought an order placing the children in their care. In light of the facts alleged, maternal grandparents asserted the current placement placed the children at risk of harm and neglect because Maria had "disregarded the [children's] safety and medical needs."

On January 23, 2019, the court denied maternal grandparents' petition without holding a hearing. The court found that the petition did not state new evidence or establish a change of circumstances, and that the proposed change would not be in the best interests of the children.

Maternal grandparents filed a timely notice of appeal.

## DISCUSSION

Maternal grandparents contend the juvenile court abused its discretion by summarily denying their section 388 petition. In their view, the court was required to order an evidentiary hearing because they established changed circumstances and grounds showing that the best interests of the children would be served by returning them to

6

maternal grandparents' care.  We conclude that the juvenile court did not abuse its discretion by summarily denying the petition.

1.    *Governing Law*

Section 388 allows a parent or other interested person to petition the court to change, modify or set aside any previous order in the case based on grounds of "change of circumstance or new evidence."  (§ 388, subd. (a)(1).)  "If it appears that the best interests of the child[ren] . . . may be promoted by the proposed change of order," the court shall order that a hearing be held on the petition.  (§ 388, subd. (d).)

On receipt of a section 388 petition, the juvenile court may either summarily deny the petition, or order a hearing if the petitioners make a prima facie showing in their favor.  (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.)  "'There are two parts to the prima facie showing:  The [petitioners] must demonstrate (1) a genuine change of circumstances or new evidence, and . . . (2) [that] revoking the previous order would be in the best interests of the children.'"  (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079; see also *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; Cal. Rules of Court, rules 5.570(d)(1) & 5.570(d)(2).)[8]

The juvenile court's summary denial of a section 388 petition will not be disturbed unless the juvenile court abused its discretion by making a decision that exceeded the bounds of reason.  (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1116–1117; see also *In re Daniel C.* (2006)

---

[8]    Subsequent references to rules are to the California Rules of Court.

141 Cal.App.4th 1438, 1445 ["'The denial of a section 388 motion rarely merits reversal as an abuse of discretion'"].) "'"When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' [Citations.]" (*In re A.R., supra*, at p. 1117.)

2. *Analysis*

Under the applicable standard of review, we cannot say the juvenile court abused its discretion by summarily denying maternal grandparents' section 388 petition.

The allegations in the petition did not establish new evidence or changed circumstances warranting modification of the children's placement. Among other things, the record is silent on whether V.L. or her siblings received medical treatment between V.L.'s first reported injury in 2017 and her second injury in 2018, and whether they received medical treatment after maternal grandparents' reports to a social worker and the Child Abuse Hotline. In addition to these issues, the suspicion that Maria C. allowed unscreened individuals to live in her home can be (and may have been) addressed and alleviated by continued oversight by DCFS and the court. Thus, we cannot say that the allegations rise to such a "'significant nature that it requires setting aside or modification of the challenged prior order.' [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).)

Even assuming the allegations constitute changed circumstances, the petition has not established how the proposed modification would promote the children's best interests. (See *In re Kimberly F., supra*, 56

8

Cal.App.4th at p. 529.)  Certainly, maternal grandparents have played a vital role in the children's lives.  But the love and stability they provide is not determinative of the children's best interests.  According to the petition itself, through the RFA process, maternal grandparents were found to be unsuitable caregivers due to mother's allegations that maternal grandfather had sexually abused her and one of the children.  Those allegations have perpetuated animosity and conflict between mother and maternal grandparents.  By placing the children back into maternal grandparents' home amidst ongoing conflict with mother, the court could reasonably determine that the requested placement would infringe on mother's fundamental interest in the children's companionship and could interfere with her efforts at reunification.  (*In re H.G.* (2006) 146 Cal.App.4th 1, 9–10; see § 361.3, subd. (d) [whenever new placement is made, consideration shall be given to relatives who have not been found to be unsuitable and who will fulfill the reunification plan].)  Moreover, the children have been placed with Maria C. for a significant period of time such that their need for continuity and stability assumes an increasingly important role.  (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1506; *Mickel O.*, *supra*, 197 Cal.App.4th at p. 616 [in assessing best interests of the children, "'a primary consideration'" is assuring stability and continuity].)  Thus, the court did not abuse its discretion by finding the children's best interests would not be served by the requested modification.

Maternal grandparents' reliance on *Mickel O.* does not compel a different result.  The children in *Mickel O.* were subject to an ongoing custody dispute between their paternal and maternal grandparents.

(*Mickel O.*, *supra*, 197 Cal.App.4th at pp. 589, 597.) Though the children had previously lived with maternal grandparents prior to the dependency, the court ultimately placed them with paternal grandparents, where the children had resided for approximately three years. (*Id.* at pp. 589, 611.) Maternal grandparents then filed a section 388 petition requesting placement of the children, or in the alternative, unsupervised visitation. (*Id.* at pp. 588, 603.) The court set the petition for a hearing alongside a hearing on the termination of parental rights. (*Id.* at pp. 597, 603.)

At the combined 388 and 366.26 hearing, an expert submitted a report and testified about a bonding study she had completed on both sets of grandparents. (*Mickel O.*, *supra*, 197 Cal.App.4th at pp. 590–597, 603.) The expert reported that despite maternal grandfather's strong and loving relationship with one of the children, the children should not be moved from paternal grandparents' home because it had consistently provided the children a sense of stability and security. (*Id.* at pp. 592, 600, 616.) Following the hearing, the court denied the section 388 petition, terminated parental rights, and terminated maternal grandparents' visitation with the children. (*Id.* at pp. 610, 612–613.)

The maternal grandparents appealed from the denial of their petition and the summary termination of visitation. (*Mickel O.*, *supra*, 197 Cal.App.4th at pp. 614, 617–618.) As to the denial of the petition, the appellate court found no abuse of discretion, because the children's best interests would be served by the continued stability and security in

the paternal grandparents' home.  (*Id.* at pp. 589, 611, 616.)  As to the termination of visitation, the appellate determined that the lower court abused its discretion, because the issue had never been raised during the hearing, permanent placement of the children was not a foregone conclusion, and termination of visitation "foreordained the outcome" that paternal grandparents (with whom maternal grandparents were fighting) could ignore any future request to visit with the children.  (*Id.* at p. 619.)

Termination of visitation is not in issue in the present case.  To the contrary, maternal grandparents have consistently visited with the children in accordance with the juvenile court's order.  The issue in *Mickel O.* that is relevant here (i.e. the denial of a section 388 petition) actually supports our conclusion.  As in *Mickel O.*, the children here had been placed with a paternal grandparent for over three years prior to the filing of maternal grandparents' section 388 petition.  With such significant time elapsed, the children's stability and continuity are of primary concern.  (See *Mickel O.*, *supra*, 197 Cal.App.4th at p. 616.)

Finally, maternal grandparents contend they were at least entitled to an evidentiary hearing in accordance with rule 5.570(f), which provides that "[i]f all parties stipulate to the requested modification, the court may order modification without a hearing.  If there is no such stipulation and the petition has not been denied ex parte under section (d), the court must either:  [¶]  (1) order that a hearing on the petition be held within 30 calendar days after the petition is filed; or  [¶]  (2) order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or

11

denied."  Under the plain meaning of the rule, the juvenile court need not order a hearing if it summarily denies the petition "ex parte under section (d)."  That is precisely what the juvenile court did in this case.  (See Rule 5.570(d) [the court may deny the petition ex parte if "(1) The petition filed under section 338(a) . . . fails to state a change of circumstance or new evidence that may require a change of order or termination . . . or fails to show that the requested modification would promote the best interest of the child, nonminor, or nonminor dependent"].)  Thus, maternal grandparents were not entitled to an evidentiary hearing.

## DISPOSITION

The order summarily denying the section 388 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

12