Filed 9/14/20 In re N.H. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| In re N.H. et. al., Persons Coming Under the Juvenile Court Law. | B302550 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.S. Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP06098 |

APPEAL from an order of the Superior Court of Los Angeles County, Kim L. Nguyen, Judge. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Melania Vartinian, Deputy County Counsel for Plaintiff and Respondent

The juvenile court exercised jurisdiction over the two children of E.S. (mother), N.H. and K.H., under Welfare and Institutions Code[1] section 300, subdivisions (b) and (j), finding the children were at risk of harm due to mother's mental and emotional problems. After a failed family maintenance plan, the court removed N. and K. from mother pursuant to section 361, subdivision (c).

Mother challenges the court's jurisdictional and removal orders, arguing they are not supported by substantial evidence. She also contends the court abused its discretion by failing to order family maintenance under section 360, subdivision (b) and by limiting mother's visitation. She principally contends the issues bringing the children within court supervision had been addressed by the time of the adjudication hearing. We disagree and affirm.

**BACKGROUND**

Mother has two daughters, N., born in 2004, and K., born in 2007. Mother divorced the children's father in 2013, and his whereabouts were unknown at the time of the petition. After her divorce, mother had difficulty meeting the children's needs. She lost her job, began to drink, and in 2018 saw a psychiatrist, who prescribed medication. Both N. and K. had suicidal ideations. K. made two suicide attempts, one in September 2018 and the second in October 2018. Mother discovered N. was cutting herself in December 2018.

The family came to the attention of the Department of Children and Family Services (DCFS) in April 2019 due to mother's chronic drinking and violent outbursts. Mother had a history of

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

2

alcohol abuse, was in Alcoholics Anonymous, and admitted to episodes of rage. She also would leave the children alone all night to go out drinking and partying. The children were not attending school.

In June 2019 mother signed a DCFS case plan agreeing to participate in voluntary family maintenance services, with the goal of keeping the children in the home with her. Mother agreed to mental health services, including family therapy, counseling, drug testing, and wraparound services.

The social worker visited the family in June and July 2019. During that time, mother revealed that although she received assistance and food stamps, she was falling behind on her rent and had received an accommodation from her landlord. Mother also admitted to not taking her psychiatric medication.

In a late August home visit, mother told the social worker that she was not currently receiving mental health services and did not feel she needed them. Mother did not keep enough food in the home, both children were thin and underweight, and K. often ate only at school. At this visit, the social worker again assessed the family and conducted a family team meeting with wraparound services. Both children wanted services. Although the children were scheduled for mental health services, their psychiatrists informed the social workers that the children were not attending their appointments because mother was unable to bring them due to mother's own mental health issues.

In September 2019, DCFS rated the family's risk level "high" due to mother's emotional abuse and general neglect of the children, lack of consistent compliance and follow up with the children's mental health treatment, and the lack of food in the home.

On September 16, 2019, DCFS obtained a removal order for N. and K. Due to mother's failure to participate in her case plan and wraparound services, on September 18, 2019, DCFS filed a petition under section 300, subdivisions (b) and (j). The petition alleged N. and K., who suffered from mental health problems, including suicidal ideation and self-cutting, were at substantial risk of serious harm due to mother's failure to take psychotropic medication.

Mother was given monitored visitation, three hours per visit, three times a week. The court scheduled hearings for receipt of report on October 21, 2019, jurisdiction on November 4, 2019, and adjudication on November 12, 2019. The children were placed with their maternal aunt, C.S.

As of mid-October, both children were back in school. Since their removal from mother, N. had been more consistent in attending her psychiatric appointments, but K. had not kept her appointments. Both children claimed mother was able to care for them, and reportedly felt guilty about their detention. The children's maternal aunt, C.S., with whom they were placed, was having difficulty meeting N. and K.'s needs and the needs of her own children.

By early November 2019, the children were attending weekly therapy sessions. In mid-November, the children were ordered detained with their grandmother, provided mother moved out of her apartment. N. and K. were also receiving wraparound services.

At the continued adjudication hearing on December 9, 2019, Mother requested the court dismiss the petition, but that if the court did assume jurisdiction over the children, it release the children to mother on the condition that grandmother reside in the home. She asserted she had been in treatment for her mental

health issues by attending therapy and taking medication, and that there was no nexus between her mental health and her ability to care for her children, as demonstrated by both children's assertion that mother was able to care for them.

DCFS responded that despite her current treatment, mother's mental health had prevented her from providing care to her children. Mother had only recently begun to take medication, and the children's psychiatrists had concerns about mother's ability to address the children's mental health needs. With respect to disposition, DCFS argued mother was unable to actively participate in the voluntary family plan. Further, simply placing grandmother in the household was insufficient to ensure the children's safety because grandmother would have the additional burden of monitoring mother's compliance with her own programs.

The court sustained the petition as amended to state "self harming" rather than "self cutting" as to K. The court found mother failed to obtain necessary mental health care for her daughters and thus placed them at risk of serious physical harm. The court found the required nexus between mother's mental health issues and harm to the children based upon the doctors' statements that the children's treatment depended upon mother's ability to get them necessary mental health services. With respect to removal, the court observed mother had made some progress in addressing her own mental health issues, but "given the severity of the situation when the Department came to this family at this juncture, the court d[id] not believe that the progress adequately serves as a safety measure to prevent removal." The court maintained monitored visitation, with DCFS given discretion to liberalize.

## DISCUSSION

## I. JURISDICTIONAL FINDINGS.

Mother argues insufficient evidence supports the jurisdictional findings. She contends there was no longer any risk to the children because both children were receiving services, including therapy, and there was no longer any food insecurity in the home. We disagree.

A juvenile court may exert dependency jurisdiction under section 300, subdivision (b)(1) if, among other things, "there is a substantial risk that [a] child will suffer[ ] serious physical harm or illness[ ] as a result of . . . the inability of [the] parent . . . to provide regular care for the child due to the parent's or guardian's mental illness . . . or substance abuse." (§ 300, subd. (b)(1).) "There are three elements to jurisdiction under section 300: '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]" (*In re Travis C.* (2017) 13 Cal.App.5th 1219, 1225.) Jurisdiction under subdivision (j) is proper where a sibling suffers abuse. (*In re I.J.* (2013) 56 Cal.4th 766, 774.)

Neither mental illness nor substance abuse alone is sufficient to invoke dependency jurisdiction. (*In re A.L.* (2017) 18 Cal.App.5th 1044, 1050 [mental illness alone insufficient]; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [substance abuse alone insufficient].) Further, to warrant the exercise of dependency jurisdiction, there must also be a "nexus between" the mental illness or drug use "and the failure to ensure [that the] children were safely cared for and supervised." (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185.) In evaluating whether a juvenile court's jurisdictional findings are supported by the record, we ask only

6

whether "'substantial evidence, contradicted or uncontradicted, supports'" those findings. (*Ibid.*) Substantial evidence is that which is "'reasonable, credible, and of solid value.'" (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) In so doing, we consider the "entire record[,]" and "resolve all conflicts, and draw all reasonable inferences to support [the juvenile] court's findings[;] '[w]e do not reweigh the evidence.'" (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

Here, substantial evidence supports the juvenile court's finding that mother's mental illness and failure to consistently take her medication resulted in lapses in care that placed the children at substantial risk of serious physical harm. First, the record demonstrates mother failed to address food insecurity in the home. Frequently, the family had insufficient food, even though mother received food stamps, because mother was unable to shop for groceries. Mother also was at times unable to fill her prescriptions. Both children were underweight, although K. could eat at school.

Second, mother failed to take the children for their psychiatric care. Both children had emotional problems, including suicidal ideation, but their physicians noted they were often "no shows" and their treatment was dependent on mother's ability to bring them to their appointments.

Finally, mother did not feel she needed mental health services and that taking her psychotropic medication alone was sufficient to address her issues. Although mother began to take her medication and consistently attend therapy after grandmother moved into the home, the court could conclude this progress was insufficient to decline jurisdiction, as mother only began to improve after formal proceedings were instituted. Indeed, mother's initial denial of the serious issues in the home supports jurisdiction. (*In re*

*A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' [Citation.]"].)

## II.    DISPOSITION

### A.    Family Maintenance Under Section 360, Subdivision (b).

Mother argues the issues that brought the children to the attention of DCFS were being addressed by the time of the jurisdictional hearing, therefore, the court abused its discretion by exercising jurisdiction over the children, rather than continuing family maintenance under section 360, subdivision (b). Mother asserts she had obtained treatment, was attending weekly mental health sessions, was taking her medication, and was assisting N. and K. with their weekly sessions. DCFS argues mother forfeited her argument, and in any event, mother failed to obtain mental health treatment and  attend to the children's mental health needs, making her a poor candidate for family maintenance.

Mother did not raise the issue of retaining family maintenance services during the disposition hearing; rather, she requested that if the court assumed jurisdiction, grandmother move into the home to ensure compliance with the case plan. Ordinarily, we "will not consider challenges . . . where an objection could have been[,] but was not[,] made in the juvenile court. [Citation.]" (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.)

Even if the issue had not been forfeited, however, we would conclude the court did not abuse its discretion. While section 360, subdivision (b) permits the court to, "without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent

or guardian under the supervision of the social worker," whether to exercise this option is a discretionary matter for the juvenile court. "'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion.' [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.) We reverse the court's dispositional order only for a clear abuse of discretion. (*Ibid*.) A court exceeds the limits of legal discretion if its determination is "arbitrary, capricious or patently absurd[.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) "'"The appropriate test . . . is whether the trial court exceeded the bounds of reason."'" (*Id.* at pp. 318-319.)

Here, the court did not abuse its discretion by deciding to discontinue family maintenance and concluding that formal supervision was necessary to protect the children's mental and physical health. Mother had been offered a family reunification plan that had been largely unsuccessful after four months (April through September) despite DCFS's efforts. Mother did not take her medication, and, as a result, she suffered mental distress and did not take the children to their own mental health appointments. Further, mother failed to keep food in the home and did not tend to the children's nutritional needs. Both children were underweight, and K. primarily ate at school. Under these circumstances, the court had ample reasons to support its order.

### B.    Removal Order.

Mother asserts that a reasonable alternative to removal existed, namely that she live in the home with the children and grandmother, with safeguards in place, such as in-home support services, unannounced visits, and random testing. Further, mother asserts she was receiving services, seeing her psychiatrist, and

taking her medication; the children were receiving wraparound services and regular psychiatric services.

After a juvenile court finds a child is described by section 300, the juvenile court "shall hear evidence on the question of the proper disposition to be made of the child." (§ 358, subd. (a).) "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶][t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).)

"'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citations.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.) "The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.*, *supra,* 197 Cal.App.4th at p. 170.)

"[C]ourts have recognized that less drastic alternatives to removal may be available in a given case including returning a minor to parental custody under stringent conditions of supervision by the agency such as unannounced visits. [Citations.]" (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 148.) Section 361, subdivision (d) requires the court to decide "'whether reasonable efforts were

10

made to prevent or to eliminate the need for removal of the minor from his or her home[.]'" (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 810.) To aid the court in determining whether "reasonable efforts" exist for protecting the children short of removal from their home, the California Rules of Court require DCFS to submit a social study which "must include" among other things, "[a] discussion of the reasonable efforts made to prevent or eliminate removal[.]" (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).)

"'We review an order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings. [Citations.]' [Citations.]" (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1116; *In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451.)

We disagree that merely placing grandmother in the home was an appropriate alternative to removal. Mother had for the duration of DCFS's involvement in the case failed to address the children's health care needs due to her own mental health issues. She did not facilitate their appointments and was in denial concerning her own mental health needs. In addition, the children had not attended school regularly while in mother's care, and the household under mother's direction frequently and repeatedly had insufficient food for the family. These issues had only begun to be addressed at the time of the disposition hearing, and thus substantial evidence supports the court's conclusion that the children could not safely remain in mother's care in the hope that mother would continue to address her own mental health issues. (See *In re John M.* (2012) 212 Cal.App.4th 1117, 1127 [child "could not safely be placed with mother in the hope that she would comply with [court orders]"].)

11

Further, if mother remained in the household, it is likely the children's progress could be jeopardized. As mother's progress was very recent and likely fragile, it would place an additional burden on grandmother to police mother's compliance with her case plan while at the same time trying to accommodate the children's needs.

### C.    Visitation.

Mother contends insufficient evidence supports the dependency court's order restricting her visitation with N. and K. to monitored visitation, asserting monitored visitation was not consistent with the children's well-being and did not meet the goal of preserving and strengthening family ties. We disagree.

A disposition order granting reunification services must provide for visitation between a child and parent "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) "Visitation between a dependent child and his or her parents is an essential component of a reunification plan . . . ." (*In re T.M.* (2016) 4 Cal.App.5th 1214, 1218.) Section 362.1, subdivision (a) explains visitation is important "[i]n order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent[.]" However, section 362.1 mandates "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).)

"In addition to requiring a court to deny visitation if the child's safety is at risk, the plain language of section 362.1, subdivision (a) only requires visitation as frequently as the well-being of the child allows. Accordingly, if visitation is not consistent with the well-being of the child, the juvenile court has the discretion to deny such contact. As courts have explained, 'well-being' includes

the minor's emotional and physical health. [Citations.]" (*In re T.M., supra,* 4 Cal.App.5th at p. 1219.)

Here, the children's well-being was jeopardized by mother's inability to tend to their mental and physical needs. Mother failed to keep adequate food in the house, resulting in the children being underweight, thereby jeopardizing their physical health. Mother further failed to take the children to their needed psychiatric appointments, further failing to address their mental health needs including suicidal ideations and self-harming behaviors. Although the children denied being afraid of mother, they reported her conduct included violent outbursts and on occasion throwing a shoe at K. As a result, we find no abuse of discretion in the court's limitation of mother's visitation.

**DISPOSITION**

The order of the juvenile court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.