Filed 12/23/20  In re T.R. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re T.R., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. J.R., Defendant and Appellant. | G059326 (Super. Ct. No. 19DP0807) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Gary L. Moorhead, Judge.  Affirmed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

INTRODUCTION

Reunification services were denied to J.R. (Mother), the mother of now 17-month-old T.R.  T.R. was removed from Mother's care and custody one day after his birth because he showed symptoms of drug withdrawal.  Just before the hearing to determine a permanent plan for T.R., Mother asked the juvenile court to change its earlier order and grant her reunification services.  The juvenile court correctly found that Mother had failed to prove either that there were changed circumstances or that an order granting her reunification services would be in T.R.'s best interests.  Therefore, we affirm the juvenile court's order denying Mother's petition under Welfare and Institutions Code section 388, and the order terminating parental rights under section 366.26.  (All further statutory references are to the Welfare and Institutions Code.)

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Following his birth in July 2019, T.R. suffered from symptoms of drug withdrawal.  Mother tested positive for amphetamine and opioids at the time of T.R.'s birth and admitted using methamphetamine and heroin intravenously two weeks prior to giving birth, and one to two times per week during her pregnancy.  One day after T.R.'s birth, the Orange County Social Services Agency (SSA) requested, and the juvenile court granted, a protective custody warrant.

SSA filed a petition alleging the juvenile court had jurisdiction over T.R. pursuant to section 300, subdivisions (b)(1) (failure to protect), (g) (no provision for support), and (j) (abuse of sibling).  The petition alleged, inter alia:  (1) Mother had used drugs during her pregnancy, causing T.R. to be born with drugs in his system and to suffer from withdrawal symptoms; (2) Mother had an unresolved substance abuse

2

problem; (3) Mother had lost custody of T.R.'s three half siblings due, in part, to her substance abuse; (4) Mother lacked a stable residence or the basic provisions to care for T.R.; (5) T.R.'s father's identity and whereabouts were unknown, but Mother stated he also had an unresolved substance abuse problem and was unfit to care for T.R.;[1] and (6) in her previous dependency proceeding, Mother had been provided reunification services but was unable to reunify with her children, and her parental rights had been terminated.

In the jurisdiction/disposition report, SSA recommended that no family reunification services be offered to Mother pursuant to section 361.5, subdivision (b)(10), (11), and (13).[2] "SSA is recommending no Family Reunification based on the mother's extensive substance abuse history, history with Social Services and previously losing parental rights of three other children. The mother has made minimal effort to resolve the issues which originally brought her to the attention of social services in June 2014 which included domestic violence, substance use and homeless[ness]. The mother continues to struggle with homelessness and substance abuse. . . . It is in the child's best interest[] to be placed in a permanent home with his half-siblings."

SSA referred Mother to substance abuse treatment, drug testing, self-help meetings, and individual counseling, and provided her with a bus pass. Mother missed two random drug tests in July. Mother visited T.R. once in July 2019, but missed three other scheduled visits.

---

[1] T.R.'s father is not a party to this appeal.

[2] These subdivisions provide that reunification services need not be provided if (1) in a prior proceeding, reunification services were terminated after the parent failed to reunify with the child's siblings or half siblings; (2) the parental rights over a sibling or half sibling have been terminated, and the parent has not made a reasonable effort to treat the problems leading to the removal of that sibling or half sibling; and (3) the parent has a history of "extensive, abusive, and chronic" drug use and has either resisted prior court-ordered treatment or has failed or refused to comply with a case plan treatment program.

The petition was amended to note that Mother was no longer homeless, having moved in with the maternal grandfather. Mother pleaded no contest to the amended petition.

T.R. was placed with the adoptive parents of his half siblings.

Mother tested positive for benzodiazepines on July 31, 2019; on August 2 and 7, 2019, she tested negative for all substances. She missed drug tests on August 6, 8, 13, 19, 26, and September 4, 2019. Although Mother was required to call in daily for random drug testing, she failed to call in at all between August 14 and September 16, 2019.

Mother was not present at the disposition hearing. The juvenile court declared T.R. a dependent child and removed custody from Mother. Pursuant to section 361.5, subdivisions (b)(10), (11), and (13), and (e)(1), the court found by clear and convincing evidence that reunification services need not be provided to Mother. The court set a hearing under section 366.26 to select a permanent plan for T.R. in January 2020 (the .26 hearing).

Between July and November 2019, Mother's visitation with T.R. was inconsistent. From November 2019 until the scheduled .26 hearing in January 2020, however, Mother visited consistently, and the visits went "fairly well."

T.R.'s foster parents, who had adopted T.R.'s half siblings, expressed a desire to adopt T.R. and raise him with his half siblings. T.R. was reported to be a happy baby, who "continued to thrive" in the care of his prospective adoptive parents. He was on track developmentally, and was no longer showing any symptoms of drug withdrawal.

SSA expressed concern regarding Mother's current substance abuse and mental health: "As for the mother's substance abuse, it is unclear if she has been consistent in a program. It would seem that she has made some attempts to become clean and sober and attend programs, but she has not made it known what she has completed or what she has been doing to ensure she is clean and sober. Thus, SSA is worried that the

4

child's mother will continue to go from program to program and will not be able to maintain sobriety, as she cannot stay in one program. In addition, it is unclear if she is ensuring her mental health issues are addressed and that she is taking the prescribed medication for her anxiety. Without knowing what the mother has done, or is doing to address the issues that brought both herself and her child, along with previous children she has had detained and had her parental rights terminated on, her future and that of her son's remains a significant concern." Therefore, SSA recommended that parental rights be terminated, and T.R. be freed for adoption.

On the day of the scheduled .26 hearing in January 2020, Mother filed a section 388 petition requesting the juvenile court change its disposition order and order instead that she be provided with reunification services. The juvenile court found no change in circumstances and denied the section 388 petition. Although the court congratulated Mother for enrolling in services, the court noted that the dependency case had started in July 2019, but she did not enroll in services until mid-November.

Because of the COVID-19 pandemic, Mother's visits with T.R. were conducted virtually, and the .26 hearing was continued several times.

Mother filed a second section 388 petition just before the rescheduled .26 hearing in August 2020 requesting that the juvenile court order family reunification services and in-person visitation.[3] In support of her petition, Mother reported she had enrolled in an outpatient substance abuse program in November 2019 and completed the program on March 31, 2020; she was currently in day four of an "up to 90 day" in-patient substance abuse program; she had fully participated in therapy sessions from January 13, 2020 to the present; she had completed a personal empowerment program in March 2020; she had completed a parenting class; on February 4, 2020, she had moved from an

---

[3] Mother's requests in the section 388 petition that the court return T.R. to her care and custody under a plan of family maintenance services or under a trial release were withdrawn at the hearing.

emergency homeless shelter to an interim housing program at Grandmother's House of Hope; she had obtained a job; she had maintained regular FaceTime visits with T.R.; and she had been clean and sober. Mother claimed the requested change of order would be in T.R.'s best interests because she had worked hard "to demonstrate to the court her willingness and ability to provide care for her son"; she had visited consistently and always been appropriate during the visits; and she had "addressed the issues that led to removal and resolved those issues and therefore the child should be returned to her."

Prior to the .26 hearing, the juvenile court considered the section 388 petition. SSA and T.R.'s counsel requested that the juvenile court deny the petition. The court summarily denied the petition, and explained its ruling thus:

"In this case, Mother's history of drug abuse and the loss of three prior children in dependency proceedings satisfied the reunification bypass provisions . . . and it was clear to the court that her regular weekly use of meth and heroin during this child's pregnancy, several months of which were with the alleged father in Mexico after his deportation, supported the finding that she had made very little progress in overcoming her extensive drug addiction since the adoption of her three prior children. The Mother reported attending Casa Teresa two months prior to T[.R.]'s birth only to be discharged due to another relapse.

"The context of this long and tortuous history of drug addiction must be considered when analyzing Mother's 388 motion. . . .

"In this case, parents with a chronic history of meth and heroin addiction, it is axiomatic that relapses are a part of the recovery process. Addiction is a lifelong battle, and overcoming the temptation to use again is a constant internal fight. As it often takes a year or more to get clean, oftentimes, especially in the case of children under three, the law seems harsh towards parents trying to make a change in their lives. That, in this Court's opinion, is the consequence faced by [Mother] in this case. . . .

6

"It was obvious to the Court in January of 2020 when the Court considered Mother's first [section] 388 request to provide her reunification services, that her circumstances were then the initial start of a changing lifestyle, not a changed lifestyle as interpreted by case law.

"We now fast forward seven more months, and Mother has maintained a program of sobriety and education, but she remains in a structured inpatient environment where there is a constant observation and reinforcement for her drug-free lifestyle. I find her dedication to changing her life admirable, and I commend her on her progress and her statement that if she does not attain reunification services with this child, that she will continue on her road to sobriety for herself to provide her with a better and more stable and rewarding life. However, given the extensive history of her prior damaging lifestyle and concurrent and her ongoing progress, I find that she has not satisfied the first prong of the [section] 388 requirements. Even for argument's sake, had she satisfied this first prong of making a changed lifestyle rather than on the road to changing to a better life, the Court does not find the second prong of, quote, best interest of the child, closed quote, satisfied. There are no specifics as to how the request to change will promote this child's best interest. He is currently in and has been in a stable, loving, and nurturing home since shortly after his birth and discharge from the hospital 13 months ago with a family that has previously adopted his three half-siblings.

"While his mother has maintained visits, including Facetime visits during the pandemic which reportedly go well, Mother has not been able to provide for him and make regular medical and social needs available to him since his birth. Mother asserts that her drug-free current lifestyle and nurturing will promote the child's best interest, but that generalization is not legally sufficient given the history of her addiction. The [section] 388 motion is therefore denied."

The court then proceeded to the .26 hearing, at which the juvenile court, by clear and convincing evidence, found T.R. to be both generally and specifically

7

adoptable, and that no exception to adoption applied.  The court terminated parental

rights.  This appeal followed.[4]

DISCUSSION

To prevail on her section 388 petition, Mother had to establish by a

preponderance of the evidence that (1) new evidence or changed circumstances exist, and

(2) the proposed change would promote the best interests of the child.  (*In re*

*Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Ernesto R.* (2014) 230 Cal.App.4th 219,

223.)  The change in circumstances proven must relate to the purpose of the prior order

such that modification of the order is "appropriate."  (*In re A.R.* (2015) 235 Cal.App.4th

1102, 1119.)  We review the juvenile court's summary denial of a section 388 petition

under the abuse of discretion standard.  (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1513;

*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079; *In re Anthony W.* (2001) 87

Cal.App.4th 246, 250.)  A petition that alleges only changing rather than changed

circumstances promotes neither stability for the child nor the child's best interests, and

does not justify a full evidentiary hearing.  (*In re Carl R.* (2005) 128 Cal.App.4th 1051,

1072.)

The trial court did not err in finding that Mother had established changing,

but not changed, circumstances.  Mother had not shown that she could maintain sobriety

outside the confines of a structured substance abuse program.  Mother's substance abuse

problem dated back to at least 2014, when T.R.'s half siblings were removed from

Mother's custody due, in part, to her abuse of alcohol and marijuana.  Mother failed to

participate in the reunification services offered during that dependency proceeding.  By

the time Mother was pregnant with T.R., she was using heroin and methamphetamine one

---

[4]  While Mother appealed from both the denial of her section 388 petition and the order
terminating parental rights, in her appellate briefs she argues only the merits of the
section 388 petition.  Mother contends that the erroneous denial of the section 388
petition requires reversal of the order terminating parental rights.

8

or two times a week. During her pregnancy, Mother enrolled in a crisis pregnancy program, but was kicked out for relapsing on illicit substances.

After T.R.'s birth, Mother enrolled in and completed a substance abuse program. Mother's section 388 petition cited negative drug tests on January 21, January 29, March 31, and August 7, 2020. Mother told her social worker that after she had finished her program, she did not undergo any further drug testing. Mother attended 12-step meetings between January and March 2020, but presented no evidence of attendance at such meetings after March.

In short, Mother did not prove that "the problem that initially brought the child within the dependency system [has been] removed or ameliorated." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) Mother failed to show that she is currently sober, and, if she is, that she could maintain that sobriety while not in a substance abuse program.

In addition, Mother failed to prove that changing the disposition order would be in T.R.'s interests. "In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity. [Citation.] 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' [Citations.] [¶] . . . [¶] After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.)

T.R. was taken into protective custody when he was one day old; he has never been in Mother's custody and care, and has no parent-child relationship with her. He is currently being cared for by the prospective adoptive parents, who have already adopted his half siblings. T.R.'s interest in continuity and stability are not consistent with a further delay in these proceedings.

Mother cites *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530 for the proposition that "an analysis of a dependent minor's best interests under section 388 is not a 'one-dimensional "better household" test.'" Specifically, Mother emphasizes the importance of T.R.'s interest "in preserving *an existing family unit*." (*Ibid.*) The unfortunate reality is that there was no existing family unit for T.R. and Mother. Even under the three-prong *In re Kimberly F.* test, we would find no error in the juvenile court's denial of the section 388 petition. First, the problem leading to dependency—Mother's substance abuse—was very serious, as Mother concedes. And while Mother began addressing the problem soon after T.R.'s detention, we cannot ignore Mother's failure to address the problem from the time it caused her to lose parental rights over T.R.'s half siblings until T.R. was born suffering withdrawal symptoms. Second, the bond between T.R. and Mother was not strong, while the bond between T.R. and the prospective adoptive parents was strong. Finally, although Mother claimed she had resolved her substance abuse problem, there was little *current* information regarding Mother's sobriety, other than her own statements. "[The child]'s best interests are not to further delay permanency and stability in favor of rewarding Mother for her hard work and efforts to reunify." (*In re J.C.* (2020) 226 Cal.App.4th 503, 527.)

DISPOSITION

The order denying the section 388 petition and the order terminating parental rights are affirmed.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.

11